293 So.2d 159 (1974)
STATE of Louisiana, Appellee,
v.
Richard C. KUHLMAN, Appellant.
No. 54149.
Supreme Court of Louisiana.
March 25, 1974.
Kenneth W. Kennon, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Frank J. Gremillion, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Kuhlman was convicted of cultivating several marijuana plants in his back yard, La.R.S. 40:971 (a), and sentenced to five years, suspended. The three bills perfected are based entirely upon the illegality of the search of his home and of the consequent seizure of the plants. We find merit to the bills and reverse the conviction.
Apparently because of the manifest insufficiency of the affidavit used to secure a search warrant belatedly executed (after four police officers had occupied the Kuhlman residence for over two hours), the state principally argues in brief and orally that the police officers had probable cause to arrest someone in the Kuhlman residence and therefore probable cause to search it and seize contraband there.
The state contends that the police had probable cause to suspect that someone there had given cocaine to one Jarreau. They had arrested Jarreau fifteen minutes before they entered and took over the Kuhlman home. (At this point it is noteworthy that, despite a thorough search of the home and premises, the police found no cocaine.)
The probable cause alleged is this: Earlier in the day an informer told the police that he had arranged to buy cocaine from *160 Jarreau at the Dobbs House Restaurant, and he was given marked money to do so. Jarreau was placed under police surveillance. Jarreau was working at vegetable stand in his front yard. He was seen to go into his house when the informer telephoned, to leave immediately in his Volkswagen, to go to the Kuhlman residence where he stayed for one to three minutes, and then to return down College Road to the Dobbs House Restaurant. Shortly afterwards, Jarreau was arrested with the marked money. The informer had what was later proven to be cocaine sold to him by Jarreau.
The officers did not know where Jarreau had obtained his cocaine. They did not know, for instance, whether he already had it at his home. However, because he stopped by the Kuhlman home en route to making the sale at the Dobbs House Restaurant, they suspected that he had obtained it at this residence.
Immediately after Jarreau's arrest, the police went to the Kuhlman residence. One of the deputies, a neighbor to the Kuhlmans, knocked at the door and asked to see the newborn Kuhlman baby. Mrs. Kuhlman admitted him and his companion, whom he introduced as his riding partner. The only persons there were Mrs. Kuhlman, her baby, and an elderly lady friend with her ten-year old granddaughter.
When the first two deputies went with Mrs. Kuhlman to the bedroom, two more deputies walked in the house. Mrs. Kuhlman and her friend were of course frightened by this invasion of the residence. The first deputy then asked for permission to search the home. Mrs. Kuhlman said she would have to ask her husband.
For the next two hours or so, at the direction of the district attorney's investigator[1], from three to four deputies and policemen continuously occupied[2] the house, keeping Mrs. Kuhlman under constant observation (although she was hemorrhaging from the recent birth of her child, she was not permitted to use the bathroom without permitting a thorough search of it first, for instance), continuously roaming around and observing into closets, standing on tiptoes to peer at shelves, etc.
The investigator left to secure a search warrant. He and the police officers stated that they did not intend to search the residence until they obtained a search warrant. However, they did in fact continuously look for contraband while in the house, without authority of any warrant or, as will be noted, of any probable cause to search the home.
The warrantless search of the home was clearly illegal.
As Chief Justice Sanders stated in his stirring dissent in State v. James, 246 La. 1033, 169 So.2d 89, 113, 118, 119 (1964), which was sustained by the United States Supreme Court when it reversed, James v. Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L. Ed.2d 30 (1965), this court's majority which had upheld a warrantless search:
"The Fourth Amendment and the specific mandate of the Louisiana Constitution guarantee immunity from unreasonable searches and seizures by the police. The right protected is that of privacy, which has been described as `one of the unique values of our civilization.' The keystone of protection is the search warrant, which *161 requires judicial endorsement of the need to invade private premises. * * *
"The search of a home without a warrant is banned notwithstanding probable cause to believe that it contains contraband or other seizable articles. Such a search, moreover, is not validated by what it brings to light. The traditions of time immemorial sustains this firm constitutional policy protecting the privacy of the home.
"[T]he substantive restriction against the invasion of private homes without a search warrant ... forms a sacred feature of our American heritage. Curtailing the substantive restriction ... impairs the protection of the right of privacy of all the homes in our statethose of both the just and the unjust."
See also Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), likewise reversing this court's majority in its validation of a warrantless search of a residence, State v. Vale, 252 La. 1056, 215 So.2d 811 (1968).
Likewise, the search cannot be justified as incident to a valid arrest, for there was no valid arrest.
The officers were adamant that they had not arrested Mrs. Kuhlman or any of the occupants of the house until, some two hours later (after the search warrant arrived), they arrested the defendant Kuhlman after they finally discovered some marijuana growing among the vegetables in the backyard garden. (After the search warrant came, they thoroughly searched the house. According to the return on the search warrant, they found nothing except the marijuana plants in the backyard.)
While the district attorney's investigator went for a search warrant, Mrs. Kuhlman was able by telephone to locate her husband, the defendant. He came within an hour, as did his father. They called Kuhlman's uncle, an attorney, who, upon finding that the officers had no search warrant, that the police leave. Mr. Kuhlman and his father did likewise. The officers refused. They permitted the elderly lady to leave, after she had agreed to let them search her car, including the locked trunk.
Despite the police officer's contention that no arrest was made until they arrested the defendant Kuhlman (which was after they discovered the marijuana plants by virtue of an illegal search), the state is probably correct in suggesting that the detention of Mrs. Kuhlman and the other occupants of the house amounted to an arrest. Cf. La.C.Cr.P. art. 213. However, it was an illegal arrest.
In the first place, our state law provides that "A peace officer, when making an arrest without a warrant, shall inform the person to be arrested of his intention to arrest him, of his authority, and of the cause of his arrest, * * *" except in circumstances when such would be impractical. La.C.Cr.P. art. 218. See also La.C. Cr.P. art. 224. A police officer obtaining entry by subterfuge, followed by three other officers who then occupy the home, all without notifying the persons that they are arrested, is clearly not a legal arrest within the meaning of this article. Cf., Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) and Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).
In the second place, although a police officer may arrest a person without a warrant when "[he] has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer", La.C.Cr.P. art. 213(3) (italics ours), no such reasonable cause existed here.
The police officers suspected that someone in the Kuhlman home may have given Jarreau the cocaine he sold some ten or fifteen minutes later to the informer. However, they did not know whether Jarreau already had it at his own home or in *162 his truck, or whether for example he had picked it up in a sealed envelope with contents unknown to the ladies or any other person in the house. His momentary stop at the Kuhlman home was suspicious to them, perhaps; but did it constitute reasonable cause to arrest everyone (or anyone) who was at the Kuhlman home at the time? (At the motion to suppress, for instance, Mrs. Kuhlman testified that Jarreau had stopped in for a minute, inquired if her husband was home, and, on finding he was not, had immediately departedan example of the possibly innocent explanations for a momentary stop.)
As we stated in State v. Wood, 262 La. 259, 263 So.2d 28, 31 (1973): "* * * probable cause for a warrantless arrest exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime... The arrest must stand on firmer ground than mere suspicion. The arresting officer, however, need not have sufficient evidence to convict."
The invasion of the Kuhlman home and the detention of the occupants was clearly illegal. If, as the state now contends, it was an arrest, it was an illegal arrest, being without a warrant and based upon no more than suspicion that the Kuhlman home (not even a particular individual in it) was the source of the cocaine which Jarreau sold to the police informer. See, e. g., Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). This being so, we need not consider whether, even assuming a lawful arrest without a warrant could be based on such facts, the warrantless search incident to such an arrest could extend to all of the rooms of the house, in addition to the area where the ladies and children were "arrested", and even to the outside premises. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
We must therefore reject the state's argument that the warrantless search of the Kuhlman home could somehow be justified as a search incident to a lawful arrest.
The search warrant which belatedly arrived some two hours after the officers had taken over the Kuhlman home is invalid. The state inferentially recognizes this by not basing its primary argument upon it.
In the sketchy affidavit used as its basis, the affiant officer stated that he had received word (at a time and from a source unstated) that Jarreau was going to sell cocaine to an informant at 4:15 p. m. at the Dobbs House Restaurant and that, on surveillance, he saw Jarreau visit the Kuhlman residence for about three minutes about ten minutes before he went to the Dobbs House, where he sold cocaine to the informer.
To justify a search of a home, more is needed than the possibility or suspicion that a seller of contraband had picked it up from a residence he had visited en route to the place of the sale, at least without further indication that the source of the conraband was the home rather than possession prior to the visit.[3] The warrant based upon an inadequate factual basis is invalid.
We therefore find merits to the bills taken to the denial of the motion to suppress such evidence, as unconstitutionally seized, and to its admission into evidence. The conviction is therefore reversed, and the case remanded for a new trial.
Reversed and remanded.
*163 SANDERS, C. J., dissents with written reasons.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents with written reasons.
SANDERS, Chief Justice (dissenting).
I agree with much of the statement of principles, relating to a home-search, set forth in the majority opinion. After study, however, I disagree with the result, both on procedural and substantive grounds.
In July, 1971, defense counsel filed a motion to suppress the marijuana and other evidence obtained in the search of defendant's residence. This motion was based upon the ground that the search warrant was invalid and there was no other legal basis to justify the search.
According to the minutes, the motion was heard on July 7, 1971, and the trial judge then sitting on the case overruled the motion to suppress. The defendant reserved no bill of exceptions.
On March 2, 1972, the defendant, now represented by other counsel, filed a second motion to suppress on the same grounds. Evidence was taken on March 9 and March 14, 1972. During the course of the hearing (Tr. 113), the State moved to dismiss the motion on the ground that a similar motion to suppress had been heard and denied on July 7, 1971, by another judge of the same court. Ultimately, the judge overruled the State's motion to dismiss and continued with the hearing. On September 5, 1972, the trial judge overruled the second motion to suppress. Defense counsel then reserved the bill of exceptions now before the Court.
In my opinion, the ruling on the first motion to suppress became final. LSA-C. Cr.P. art. 703. That ruling still stands and is not now before this Court for review. Until that ruling was set aside, a hearing on a second motion to suppress on the same grounds was improper.
Assuming, arguendo, that the second motion to suppress was properly entertained, I am of the opinion that the ruling of the trial judge denying the motion was correct.
The seizure of the marijuana plants was made under a search warrant issued by a judge of the Nineteenth Judicial District Court for East Baton Rouge Parish. The affidavit supporting the warrant recites:
"BEFORE ME, ELMO LEAR, Judge of the Nineteenth Judicial District Court in and for the State and Parish aforesaid, personally appeared Jack M. MERGEN, Deputy Sheriff in and for the Parish aforesaid, who, being duly sworn by me, deposed and said:
"THAT probable cause does exist for the issuance of a search warrant authorizing the search of The residence, located at 1768 College Drive, where A quantity of controlled dangerous substances, to wit: Cocaine, Marijuana, L.S.D. and equipment used for their administration is (are) believed to be secreted or concealed, and such probable cause is based upon the following: Affiant informs the court that he had received reliable information that Kenny Jarreau was going to sell a quantity of Cocaine to a subject at the DOBBS HOUSE Restaurant at about 1615 hrs., 6/3/7]. Affiant further informs the court that he conducted a surveillance of the Jarreau subject and at about 1605, 6/3/7] he observed Jarreau to drive to the above listed residence where he stayed for about three (3) minutes.
Affiant then followed Jarreau who went directly to the DOBBS HOUSE on Perkins road and watched him pass a clear plastic bag containing white material to Gus Voight. Affiant further informs *164 the court that Voight was stopped and searched and a quantity of suspected Cocaine was retrieved from his right front pocket. Affiant further informs the court that the subject Jarreau was immediately placed under arrest. Affiant further informs the court that the subject who lives at 1768 College Drive is Richard C. KUHLMANN * * *."
In my opinion, the factual recitals of the affidavit are sufficient to satisfy constitutional requirements. See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).
For the reasons assigned, I respectfully dissent.
MARCUS, Justice (dissenting)
I respectfully dissent.
In my opinion, the evidence herein (marijuana plants) was seized as the result of a valid search warrant. The affidavit upon which the search warrant was issued is based primarily on the affiant's personal observation of the commission of a crime in which there was reasonable cause to believe that defendant's residence was involved. Accordingly, I consider the motion to suppress was properly denied. The conviction and sentence should be affirmed.
SUMMERS, Justice (dissenting).
I join with the Chief Justice in the reasons he has assigned in his dissent.
NOTES
[1] In fairness, it should be noted that, at the time, the investigator and the sheriff's deputies involved were not employed by the present incumbent district attorney or sheriff. It should also be noted, in fairness to the former incumbents, that the testimony indicates that the incident to be described was highly unusual and not at all typical of the normal operations of the offices.
[2] One of the policemen testified: "He told us to occupy the residence and not let her destroy any evidence and that he was going to obtain a search warrant." Tr. 126.
[3] The investigator who made the affidavit admitted that the police "had absolutely no idea" as to the source of Jarreau's cocaine and that, until "I saw Jarreau go to somebody else's house, I thought he probably had it himself" (i. e., at his own home). Tr. 106.