358 So.2d 1257 (1978)
STATE of Louisiana, Respondent,
v.
Donald R. JONES, Relator.
No. 60955.
Supreme Court of Louisiana.
May 22, 1978.
Dissenting Opinion June 1, 1978.
*1258 Kenneth D. McCoy, Jr., Whitehead & McCoy, Natchitoches, for relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Rutledge, Asst. Atty. Gen., Ronald C. Martin, Dist. Atty., Andrew S. Vallien, Asst. Dist. Atty., for respondent.
TATE, Justice.
The defendant Jones was convicted of possession of marijuana, La.R.S. 40:966(C), fined $500, and sentenced to six months imprisonment. We granted certiorari, 351 So.2d 1213 (1977), because we believed that, on the showing made, the defendant was convicted on the basis of evidence seized as a result of an unlawful entry into and search of the apartment in which the defendant, his wife, and his two children lived. His motion to suppress evidence so seized was denied by the trial court.
The facts of the entry and search are as follows:
At about 7:00 p. m. the city police received a complaint of loud music in a ground floor apartment of the College Manor Apartments. Two policemen went to the door of the apartment, accompanied as backup by a third officer with a canine.
A policeman knocked on the door. The defendant Jones opened it, and the policeman asked him to turn the music down. Jones closed the door and turned the music down. When he reopened it a crack, an officer put his foot in the door, and the officers forced their way in.
The policemen testified that they did so because they smelled marijuana smoke. They saw in the ashtray what they thought were (cold) stubs of marijuana cigarettes.
In the darkened living room, five young men were sitting listening to the music. Jones' wife and two children were in the adjacent bedrooms.
The policemen sent for a narcotics officer. On the basis of their report, the latter executed an affidavit and secured a search warrant. However, since (for reasons to be stated) we find there was no initial probable cause for the warrantless *1259 entry into the apartment, the evidence[1] seized pursuant to the warrant should have been suppressed: The affidavit and the warrant itself were based upon the product of an illegal invasion of a home without probable cause. State v. Kuhlman, 293 So.2d 159 (La.1974).
Essentially, the officers burst into this residential apartment because (they said) they smelled an odor which resembled marijuana smoke. The search warrant was secured on this basis, and because, after entry of the officers, they saw in the ashtrays what they believed to be marijuana roaches.
However, subsequent laboratory analysis did not identify the burnt cigarettes as containing marijuana. The cigarettes themselves were cold, when the officers burst in, seconds after they thought they smelled the odor. They found no substance or cigarette burning or warm anywhere in the apartment (although they thought the marijuana smell came from the cold butts in the ashtrays).
In our opinion, the evidence proves beyond reasonable dispute that the odor, if any, smelled by the officers could not have been marijuana. It is apparent that, if indeed there was an odor, it resulted from some other source than any marijuana smoked in the apartment. Thus, in fact no actual probable cause existed for the police to invade this residential apartment, without a warrant as done (or even with a warrant).
In summary, probable cause for a forcible entry into a residential apartment is not supplied by the invading officers' smelling non-existent marijuana smoke. Merely imagined smells cannot supply such cause to invade the sanctity of a home. Imagined facts based upon mere suspicion, like mere suspicion itself, cannot suffice as probable cause to do so.
To permit governmental agents to search on such a basis would undermine the right of individuals guaranteed by our state constitution "shall be secure . . . against unreasonable searches, seizures, or invasions of privacy." La.Const. of 1974, Art. 1, Section 5. The constitutional sanctity of a home against unreasonable government intrusion should not depend on the unfounded imagination of police officers, or the potential for fabrication that thereby would result.
Further, no exigent circumstances are shown for these police officers to burst into the apartment without a warrant, even though there had been probable cause. As we reiterated in State v. Kuhlman, 293 So.2d 159, 161 (La.1974): "`The search of a home without a warrant is banned notwithstanding probable cause to believe that it contains contraband or other seizable articles. Such a search, moreover, is not validated by what it brings to light. The tradition of time immemorial sustains this firm constitutional policy protecting the privacy of the home.'"

DECREE
Accordingly, the denial of the motion to suppress is overruled, and the conviction and sentence are reversed; the case is remanded for a new trial in accordance with law.
Reversed and remanded.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
Defendant Donald R. Jones was charged by bill of information, tried and found guilty of possession of marijuana. La.Rev. Stats. 40:966(C). He was sentenced to pay a fine of $500 and costs and to serve six months in jail, the jail sentence to be suspended and defendant to be placed on supervised *1260 probation upon payment of the fine and costs.
Certiorari was granted on defendant's application.
In the beginning of the trial, after a colloquy between counsel and the trial judge, the judge concluded that the testimony of the criminologist was to the effect that certain items which were not suppressed were identified as a dangerous substance, marijuana. No objection was made to this finding. Thereafter the trial proceeded. The State's witnesses testified, and at the close of the State's case the defense moved for a judgment of acquittal, on the basis that the State had not introduced the marijuana in evidence. The motion was denied. No evidence was presented on behalf of the defendant.
According to the trial testimony of Officers Dyson and Spencer of the Natchitoches City Police, on November 30, 1975 they were together on patrol in a marked patrol car. A radio call received from headquarters instructed them to investigate a complaint at the College Manor Apartment. Five minutes later they arrived at the apartment of the complainant. He invited them in and complained that loud music was disturbing him and his wife. Loud music from the apartment below could be heard by the officers, and they advised the complainant that they would go there and ask the occupants to turn the music down.
Officers Dyson and Spencer then approached the downstairs apartment and knocked at the door where the loud music was heard. Defendant Jones came to the door and opened it four or five inches. Dyson asked him if he would mind turning the music down and advised that they would like to talk to him, whereupon Jones shut the door. By knowing glances the officers both indicated that the smell of marijuana smoke was coming from the room "an odor of marijuana coming from the apartment." Shortly thereafter the sound of music was lowered and Jones returned to the door, opened it about six inches and tried to shut it again. Dyson then pushed the door open and the officer walked into the apartment. They were followed by Officer Beal, their back-up. There were five people in the dark, smoke-filled room. The officers shined their flashlights, Dyson directing his to a coffee table where he observed numerous marijuana seeds and remnants of a marijuana cigarette in an ashtray, while Spencer shined his light on the room's occupants.
Occupants of the room were told to remain seated and Officer Dyson telephoned Detectives Silvie and Dove who hurried to the scene and took over the investigation.
Detective Silvie had been at the police station and heard the complaint and the radio operator's call dispatching Officers Dyson and Spencer to the apartment house. When Silvie was called to the scene he entered the dimly lighted apartment where the music was playing and the officers still had their flashlights on. Officer Dyson pointed out the substance on the coffee table which appeared to Silvie to be gleanings of marijuana, a burned roach.
Detective Silvie then read the Miranda warning to the five occupants of the room. Having been informed that the apartment belonged to Jones, he asked Jones to step outside where he inquired if Jones would consent to a search of his apartment. After he thought awhile, Jones answered he would not consent to a search. Silvie then prepared an affidavit to serve as an application for a search warrant, sought out the District Judge, signed the affidavit in his presence and obtained a search warrant. He then returned to Jones' apartment with the warrant. In the meantime Officers Dyson and Spencer had secured the scene of the investigation.
After displaying the warrant to Jones the officers conducted a search of the apartment. The substance on the coffee table and in the ashtray was collected. From a jacket hanging on the back of a chair occupied by one of the suspects two plastic bags of suspected marijuana were obtained. Another plastic bag of suspected marijuana and rolled cigarettes were found at the bottom of a trash container. The seized material was brought to the police station *1261 by Detective Silvie who marked it and delivered it to the crime lab.
Insofar as this dissent is concerned, the defense asks: Can a police officer's mistaken belief that marijuana smoke is present constitute probable cause to justify warrantless entry into a residence?
During presentation of the State's evidence the trial judge ruled that Officer Dyson could testify that the substance observed by him on the coffee table was marijuana. "It is what he may, because of his training, suspect," the judge ruled. ". . . I would say probable cause had already developed, because he smelled what he recognized as marijuana."
Although Dyson admitted on cross-examination having heard the criminalist testify that she was unable to detect any evidence of marijuana from the contents of the ash tray, he would not concede that he was wrong about what he thought was in the ash tray. He stated that because of a defense objection the criminalist did not have a chance to explain her statement relating to the contents of marijuana in the seeds. The trial judge then ruled that his recollection of the testimony given by the criminalist was that the seed was not live seed subject to germination, and therefore no report could be made. He ruled that probable cause for the entry was established when the officers smelled marijuana smoke, and the question then became one of possession.
Officer Spencer also testified that he thought that the smoke which filtered through the partly open door was marijuana smoke. Although he had received no special instruction in detecting marijuana, he had "been around a lot of it" when he was overseas, where "they grew it .. like wild." He testified, "I know what it is." Both officers had had occasion in their police duties to participate in investigations which involved suspected marijuana.
Smell is, of course, an important sense, commonly employed by laymen to identify substances. Often the sense of smell is as reliable, if not more so, than the sense of sight or touch. This much is common knowledge. The odors of marijuana and opium have served as the principal factors establishing probable cause to arrest in a number of cases. United States v. Miramontes, 494 F.2d 808 (9th Cir. 1974); United States v. Ogden, 485 F.2d 536 (9th Cir. 1973), cert. denied, 416 U.S. 987, 94 S.Ct. 2392, 40 L.Ed.2d 764 (1974); United States v. Troise, 483 F.2d 615 (5th Cir. 1973); cert. denied, 414 U.S. 1066, 94 S.Ct. 574, 38 L.Ed.2d 471; Hernandez v. United States, 353 F.2d 624 (9th Cir. 1965), cert. denied, 384 U.S. 1008, 86 S.Ct. 1972,16 L.Ed.2d 1021 (1966); United States v. Fischer, 38 F.2d 830 (3rd Cir. 1930). Detection of drugs by dogs was a sufficient basis for an arrest in United States v. Venema, 563 F.2d 1003 (10th Cir. 1977).
It is evident from this record that the trial judge was impressed with the sincerity of Officers Dyson and Spencer and with their knowledge of, and experience with, marijuana. Their unqualified statement that they smelled marijuana was direct evidence that a dangerous drug was in the apartment. These factors, combined with the Jones' actions in attempting to close the door, the loud music and dimly lighted room, and the delay in opening the closed door, furnished the ingredients of probable cause which satisfied the trial judge that the officers were justified in entering the apartment to prevent destruction of the marijuana and to search for the cause of the smoke.
These facts and circumstances were sufficient to warrant a reasonably prudent man to believe that marijuana was present in Jones' apartment. The reasonableness of the attitude of the officers was further manifested by their refusal after entry to seize what they believed to be marijuana in plain view or to press for a more extensive search without a search warrant.
In resolving this question I am guided by settled standards recognized by adjudications of our highest courts relating to search and seizure under both State and Federal Constitutions.
*1262 An officer may break and enter with or without a warrant to arrest if he in good faith believes that evidence is threatened with destruction or removal. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); State v. Tarver, 324 So.2d 382 (La. 1975).
Louisiana's standard is set by the legislature. Article 213 of the Code of Criminal Procedure permits an arrest by a peace officer without a warrant when the peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in his presence. This standard is compatible with Federal standards.
The probable cause the law requires for the issuance of a search warrant under the Fourth Amendment is determined by the same standards applicable to probable cause for an arrest. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).
Reasonable cause or "probable cause", as it is termed under the federal standard to make an arrest without a warrant exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that an offense has been or is being committed. U.S. Const. Amend. 4; La.Const. art. I, § 5; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); State v. Marks, 337 So.2d 1177 (La.1976); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966); State v. Green, 244 La. 80,150 So.2d 571 (1963); State v. Aias, 243 La. 945, 149 So.2d 400 (1963); State v. Calascione, 243 La. 993, 149 So.2d 417 (1963).
Compliance with these standards is, in the first instance, a substantive determination to be made by the trial court from the facts and circumstances of the case. Ker v. California, 374 U.S. 513, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Mallvaine, 247 La. 747, 174 So.2d 515 (1965).
And in determining compliance with these standards it is not the proof required for conviction which concerns us. Proof required to satisfy the requirement of reasonable cause or probable cause is less and is what the terms imply: probabilities and practical considerations of everyday life on which reasonable men could reasonably be expected to act. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Bourg, 248 La. 844, 182 So.2d 510 (1966).
A grudging or negative attitude by reviewing courts will tend to discourage police officers from submitting their evidence to a judicial officer before acting. Probable cause must therefore be tested and interpreted by magistrates and courts in a common sense and realistic fashion. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Magistrates should not be confined to niggardly limitations or by restrictions on their common sense. Their determinations of probable cause should be paid great deference by reviewing courts, and the resolution of doubtful or marginal cases should be largely determined by the preference accorded to warrants. State v. Sierra, 338 So.2d 209 (La.1976).
In such cases, because only factual issues are presented by the contentions, the setting in which the arrest took place becomes a factor of prime importance; facts and circumstances known to the arresting officers from which they might draw conclusions warranted by their training and experience becomes the focus of our attention with due allowance for the discretion vested in the trial court.
Based upon these recognized legal standards, and the facts and circumstances of this case, the finding that there was probable cause for the officers to enter Jones' apartment to arrest him is well-founded.
I would uphold the ruling of the trial judge.
NOTES
[1] As of a result of the consequent painstaking search of the premises, the police found one plastic baggie and two unburned cigarettes of marijuana in the trash containers, and two plastic baggies of marijuana in a blue jean jacket that did not belong to Jones. After Jones was arrested because of the product of this painstaking but illegal search (see text below), gleanings were removed from his clothing which, upon laboratory analysis, appeared to be marijuana.