470 So.2d 291 (1985)
STATE of Louisiana
v.
Darrell BOURG.
No. 84-KA-623.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1985.
*292 Dorothy Pendergast, Asst. Dist. Atty., Research & Appeals, Gretna, for the State.
John H. Craft, Craft & Doskey, New Orleans, for defendant/appellant.
Before BOUTALL, BOWES and DUFRESNE, JJ.
BOWES, Judge.
On April 25, 1983, appellant, Darrell Bourg, was charged by a bill of information with violation of La.R.S. 14:67, theft of property with a value of more than $500.00. The defendant waived his right to a trial by jury and, on February 22, 1984, trial commenced before a judge of the 24th Judicial District Court. On February 29, 1984, Bourg was found guilty of theft of property valued at more than $100.00, but less than $500.00. A pre-sentence investigation report was ordered and, after receipt and review of same, the defendant was sentenced on May 16, 1984, to serve two years in the Jefferson Parish Correctional Center, suspended, conditioned on a successful completion of five years active probation. The conditions of probation included payment of a $1,000.00 fine, plus various judicial fees, restitution to the victim of $300.00, and the service of six months in the Jefferson Parish Correctional Center, with credit for time served.
From that conviction, the appellant appeals and argues the following assignments of error:
1. That the court erred in denying defendant's motion to suppress evidence.
2. The court erred in denying defendant's motion to suppress inculpatory statements.
3. The evidence presented against defendant was not sufficient to justify a verdict of guilty of theft of more than $100.00.
4. Also assigned as error are any and all errors patent on the face of the record.
Defendant argues on assignment number one that the application for the search warrant failed "to recite sufficient corroboration to justify that conclusion that probable cause to search appellant's home existed." Detective G.D. Caraway of the Jefferson *293 Parish Sheriff's Office prepared the warrant application. That application reads as follows:
On Monday, 11th April 1983, 10:00 a.m., Detective G.D. Caraway received information from an anonymous source, who stated that on the 1st April 1983, a subject by the name of DARRYL BOURG, went to the Houseworks at 1600 Westbank Expressway, Harvey, Louisiana, at which time he met with an unknown white male subject who manages the Lumber Department. This subject went on to state that DARRYL BOURG, at this time, gave this subject $100.00 in cash, at which time, the subject assisted him in stealing over $1,000.00 worth of lumber from Houseworks Store. Then anonymous source continued by stating that the Manager from Houseworks [sic] father, manages and owns the Casablanca Lounge, Gretna, Louisiana. It was further learned that the lumber taken from the store by DARRYL BOURG, with the assistance of the Manager, was delivered by DARRYL BOURG, to 2504 Claire Avenue, Gretna, Louisiana.
On the 11th April 1983, 1:00 p.m., Detective Caraway contacted the Jefferson Parish Sheriff's Office Vice Squad Section, at which time it was learned that the owner/manager of the Casablanca Lounge was a Julius J. Milan. It should be noted that the Casablanca Lounge is located next to the Flamingo Lounge, which is managed by the subject, DARRYL BOURG, who had stolen the lumber from Houseworks.
On the 11th April, 1983, 1:35 p.m., Detective Caraway checked the residence at 2504 Claire Avenue, Gretna, Louisiana, at which time he observed new lumber stacked on the south side of the residence, and observed an addition in the back of the residence, which was presently under construction.
On the 11th April 1983, 2:00 p.m., Detective Caraway spoke to Mr. Dick Felton, via telephone, at which time it was learned that an employee by the name of Randall Milan, was presently employed at the Houseworks Store, 1600 Westbank Expressway, Harvey, Louisiana, in the Lumber Department.
On the 11th April, 1983, 3:00 p.m., Detective Caraway was met at the Jefferson Parish Sheriff's Office Criminal Investigations Division, by Mr. Dick Felton, who is the head of Security for Houseworks Company. Mr. Felton, at this time, advised Detective Caraway that the subject Randall Milan, presently lives at 208 Broadway Drive, Gretna, La., and gave as a reference, his mother, Fae Milan, who also resides at 208 Broadway Drive, Gretna, Louisiana. Mr. Felton further advised Detective Caraway that Randall Milan's brother, Robert Milan, worked in delivery, and that he had listed Julius Milan as his reference.
On the 11th April 1983, 3:30 p.m., Detectives G.D. Caraway and G. Bayer arrived at 1600 Westbank Expressway, Harvey, Louisiana, Houseworks. Detectives Caraway and Bayer at this time met with Randall T. Milan, male caucasian, dob: 9-25-63 who after having been read his rights per Miranda gave Detectives Caraway and Bayer a statement in reference to him and Darryl Bourg stealing approximately 40 sheets of CDX plywood, 402 × 4's and 402 × 6's.
On the 17th April, 1983, 4:05 p.m., Detectives Caraway and Bayer arrived at the Jefferson Parish Sheriff's Office Criminal Investigation Division with arrested subject, Randall Milan, who was once again read his rights per Miranda. Mr. Milan at this time signed a Jefferson Parish Sheriff's Office Rights of Arrestee or Suspects and Waiver of Rights form. Mr. Milan then gave Detective Caraway a written statement in reference to his assisting Darryl Bourg in stealing the aforementioned lumber.
On the 11th April 83, 4:45 p.m., Detective Caraway checked the HAINES DIRECTORY to see who resided at 2504 Claire Avenue, Gretna, Louisiana, at which time it was learned that the registered *294 owner according to the directory was Kenneth Bourg.
Based on the aforementioned facts and information, Detective Caraway requested that a search warrant be issued for 2504 Claire Avenue, Gretna, Louisiana.
Prior to trial, at a Motion to Suppress hearing, the district judge reviewed the application and affidavit for the search warrant and determined that probable cause for the search warrant was stated therein. The Motion to Suppress was therefore denied.
It is well-settled that a search warrant may issue only upon probable cause established to the satisfaction of the issuing judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant. United States Constitution Amendment IV; Louisiana Constitution 1974, Article I, Section 5; LSA C.Cr.P. Article 162. Probable cause exists when facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Tate, 407 So.2d 1133 (La.1981); State v. Mena, 399 So.2d 149 (La.1981); State v. Ditcharo, 441 So.2d 326 (La.App. 5th Cir.1983); State v. Williams, 432 So.2d 1003, writ denied 435 So.2d 439 (La.App. 1st Cir.1983).
In Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court set forth a "two-pronged test" establishing the criteria which a magistrate must follow in determining if an affidavit based upon hearsay (such as information from a confidential informant) has established probable cause for the issuance of a search warrant.
"[T]he magistrate must be informed of some of the underlying circumstances from which the informant [based his conclusions]... and some of the underlying circumstances from which the officer [affiant] concluded that the informant, whose identity need not be disclosed, ... was `credible' or his information `reliable'. [footnote omitted] Aguilar, supra 84 S.Ct. at 1514.
In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court expressly abandoned the "two-pronged test" established in Aguilar, supra, in favor of a "totality of the circumstances" approach, stating:
This totality of the circumstances approach is far more consistent with our prior treatment of probable cause 6 than is any rigid demand that specific "tests" be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a "practical, nontechnical conception." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). "In dealing with probable cause, ... as the very name implies, we deal with probabilities. [...]
[P]robable cause is a fluid conceptturning on the assessment of probabilities in particular factual contextsnot readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons. As we said in Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972), "Informants' tips, like all other clues and evidence coming to a policeman on the scene may vary greatly in their value and reliability." Rigid legal rules are ill-suited to an area of such diversity. "One simple rule will not cover every situation." Ibid.7
The court concluded:
... [T]hat it is wiser to abandon the "two-pronged test" established by our decisions in Aguilar and Spinelli.11 In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations. See Jones v. United States, supra; United States v. Ventresca, [380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684] supra; Brinegar v. United States, supra. The task of the issuing magistrate *295 is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. Jones v. United States, supra, 362 U.S., [257] at 271, 80 S.Ct., [725] at 736 [4 L.Ed.2d 697]. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from Aguilar and Spinelli.

Appellant relies on State v. Ruffin, 448 So.2d 1274 (La.1984), wherein deputies based their probable cause for an arrest solely upon the unverified information supplied by a confidential informant.
In the instant case, had the search warrant been issued solely upon the information provided by the confidential informant, then it would have succumbed to a probable cause challenge, for neither the reliability of the informant nor the basis of his information is evident in the first paragraph of the warrant where Detective Caraway details how the investigation began. However, the next six paragraphs of the application detail independent observations by Detective Caraway which "significantly buttressed the informant's tip." Detective Caraway observed new lumber at the address the informant indicated, learned that a man named Milan was employed at Houseworks in the Lumber Department, and thereafter met with Milan. Milan gave a statement admitting participation in the theft of the lumber with the defendant, and the statement was later reduced to writing. Milan's self-incriminating statement implicated the defendant in the theft of lumber from Houseworks, further corroborating the confidential informant's information. The house at which the lumber was located was registered in the name of Kenneth Bourg. It would seem that the corroborating facts from Detective Caraway's investigation and observations permitted "the suspicion engendered by the informant's report to ripen into a judgment that a crime was probably being committed." Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 637 (1969).
We, therefore, find that there existed probable cause for the issuance of the search warrant; that the district judge was correct in denying defendant's motion to suppress; and the defense's first assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
"The trial court erred in denying defendant's motion to suppress inculpatory confession."
Immediately following the arrest of the defendant, he told police he had receipts from two different stores for the lumber, then retracted the statements and said he had no receipts. Defense counsel contends that the statements were made after an illegal search of the defendant's home and the illegal arrest of the defendant; therefore, the statements were "fruit of the poisonous tree" and should have been suppressed by the trial judge. Defense counsel acknowledged that the defendant was informed of his Miranda rights and implicitly waived those rights at the time he made the statements.
It is well-settled that a defendant's inculpatory statements made following an illegal arrest are admissible at trial only if they were not the direct result of the illegal arrest. State v. Arceneaux, 425 So.2d 740 (La.1983); State v. Rebstock, 418 So.2d 1306 (La.1982).
Since we have already determined that Detective Caraway's application for a search warrant set forth probable cause for the search of the defendant's house, the defendant's arrest, which was based upon the evidence seized in the search, was "legal." The defendant's statements, made voluntarily after Miranda warnings were *296 given, are therefore admissible into evidence. State v. Mitchell, 437 So.2d 264 (La.1983); State v. James, 459 So.2d 28 (La.App. 1st Cir.1984); LSA C.Cr.P. Article 451. This assignment also lacks merit.

ASSIGNMENT OF ERROR NUMBER 3
"The evidence presented against defendant was not sufficient to justify a verdict of guilty of theft of more than $100.00."
In order for the defendant's conviction to be upheld on appeal, the state must have proven the following essential elements beyond a reasonable doubt: (1) that the defendant misappropriated or took; (2) a thing of value; (3) that belonged to another; and (4) that the defendant had the intent to deprive the owner permanently of that which was misappropriated or taken. State v. Pittman, 368 So.2d 708 (La.1979); State v. Thibodeaux, 441 So.2d 821 (La. App. 3rd Cir.1983).
The state must further prove the value of the stolen property, for upon this proof depends the determination of the severity of the theft, and the punishment for a convicted offender. State v. Jones, 358 So.2d 1257 (La.1978); See also State v. White, 404 So.2d 1202 (La.1981); State v. Holmes, 451 So.2d 1175 (La.App. 1st Cir. 1984).
In its case in chief, the state presented the following evidence that the defendant stole lumber from Houseworks:
Detective Carl Armas testified that during a search of the defendant's residence at 2504 Claire Avenue, officers seized 28 2 × 4's, 38 2 × 10's and 10 sheets of plywood. Armas identified State Exhibits 1-6 as photographs of the lumber stacked on the side of the defendant's house. Detective Armas went on to state that the defendant arrived at his residence shortly after the search commenced, was advised of his rights, and arrested. Detective Armas stated that the defendant first claimed the lumber had been purchased from West's and he had a receipt. Unable to produce the receipts, the defendant then claimed the lumber had been purchased from Houseworks. Detective George Caraway testified that he had obtained the search warrant for the defendant's residence and went on to corroborate all the details given by Detective Armas. Detective Caraway added that other lumber suspected of being stolen was incorporated into the building and therefore was not seized, for to do so would have meant tearing down part of the defendant's residence. Detective Caraway stated that the director of security for Houseworks identified the lumber seized as stock from the store.
Randy Milan testified that he was employed in the lumber department at Houseworks on April 1, 1983, when the defendant approached him several times regarding a "sale" of lumber. Despite the fact that store policy required that the defendant have a register receipt before he could pick up any lumber, Milan agreed to give the defendant a truckload of lumber for $100.00. The defendant, and a man later identified as John Rietzake, drove behind Houseworks, helped Milan load the lumber, and drove off after the defendant gave Milan a $100.00 bill. Milan kept the money for himself, knowing that the entire transaction was illegal. Milan positively identified the defendant in court.
John Rietzake corroborated the testimony of Milan regarding the events of April 1, 1983. Rietzake testified that, at the defendant's request, he drove the defendant to Houseworks in a friend's pick-up truck. Rietzake thought the defendant was going to purchase lumber. However, when Rietzake saw the defendant give Milan $100.00 for the lumber, he realized that some type of illegal transaction had taken place, for the lumber was worth far more than $100.00. Rietzake went on to state that they brought the lumber to 2504 Claire Avenue. During the drive, the defendant is alleged to have said "... that's pretty good. We got twelve, thirteen hundred dollars worth of lumber and only paid $100.00 for it."
In rebuttal of the prosecution's case, the defense first attacked the character of Milan by showing that he made a prior inconsistent *297 statement and then called various friends and relatives of Bourg who testified that, on April 1, 1983, the defendant went across the lake at 7:00 a.m. to visit his mother and did not return until late Sunday evening. The defendant took the stand and corroborated that testimony. He also accused Milan of lying because "I put him out of my place three years ago for selling drugs and I have been having problems with him ever since then." The state called Robert Toal in rebuttal of the defense case. Toal testified that it was his truck which the defendant and Rietzake used to haul the lumber. Toal had taped a conversation he had with the defendant regarding the incident and the tape was introduced at trial as State's Exhibit 6. The tape details the defendant's involvement in the theft and his attempts to cover his tracks by procuring false receipts.
In reaching its decision in this case, the court was faced with a credibility choice; should it believe the version of events as brought out by the state or by defense counsel. In finding the defendant guilty as charged, the court indicated that it accepted the state's version as true. It is not the function of a reviewing court on appeal of a criminal conviction to evaluate the credibility of witnesses and overturn a trial court of its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La. 1983); State v. Cockerham, 442 So.2d 1257 (La.App. 5th Cir.1983). It is the role of the fact-finder to weigh the respective credibility of the witnesses, and an appellate court should not second-guess the credibility determination of the trier of fact beyond sufficiency evaluations under the Jackson standard of review. State Ex. Rel. Graffagnino v. King, 436 So.2d 559 (La.1983), State v. Jackson, 452 So.2d 1225 (La.App. 2nd Cir. 1984). See also State v. Butler, 450 So.2d 764 (La.App. 5th Cir.1984), where the court stated "[w]hen there is conflicting testimony, the credibility of witnesses is a matter within the sound discretion of the trier of fact, in this case the 12-person jury. Factual determinations will not be disturbed on review unless clearly contrary to the evidence. State v. Richardson, 425 So.2d 1228 (La.1983) and State v. Klar, 400 So.2d 610 (La.1981)."
Thus, viewing the evidence in the light most favorable to the prosecution, it is apparent that the state proved beyond a reasonable doubt that the defendant stole lumber from Houseworks. All parties involved testified to this effect except the defendant. The taped conversation clearly shows the defendant's knowledge of the illegality of his conduct and his attempts to cover his tracks. The intent to permanently deprive Houseworks of the lumber can be inferred from the fact that the defendant brought the lumber to his personal residence and had incorporated some of it into the structure.
In regard to the value of the stolen lumber, Wilbert Johnese, the supervisor of the lumber department at Houseworks, testified that he helped remove the stolen lumber from the defendant's residence. Johnese testified that, at that time, ½ inch plywood sold for $7.07 a sheet, 3/8 inch plywood for $6.39 a sheet, 2 × 6 × 12's for $5.29 each, and 2 × 4 × 14's for $3.29 each. The defendant was found guilty of theft of lumber valued at $488.45 (Vol. I, R. p. 11). It is not clear how the court arrived at this figure, due mainly to the fact that Milan, Rietzake, the search warrant and the return, described different amounts of lumber.[1] However, it is apparent that using any of the above sources as evidence of the number and kind of boards stolen, the value of the lumber exceeded $100.00. Therefore, we find that the state proved beyond a reasonable doubt that the defendant stole lumber worth more than $100.00. Had the record indicated which testimony the trial *298 judge used when determining the value of the goods stolen, determination of value on appeal would have been easier; however, the record shows enough for this court to determine that the goods stolen by the defendant exceeded $100.00 in value.[2] It does not appear crucial that this court determine how the trial judge reached the exact figure of $488.45.
As the evidence clearly shows that the defendant stole lumber worth at least $100.00 from Houseworks, with the intent to permanently deprive Houseworks of its possession, we find that the state proved every element of the theft beyond a reasonable doubt. This assignment, likewise, has no merit.

ASSIGNMENT OF ERROR NUMBER 4
"Also assigned as error are any and all errors patent on the face of the record." Our review of the record in the instant case reveals no errors patent on the face of the record.
Accordingly, for the reasons stated above, the conviction and sentence of the defendant, Darrell Bourg, are affirmed.
AFFIRMED.
NOTES
[1] Milan stated that the minimum amount of lumber stolen was 30 sheets of plywood, 30-2 × 6's and 50-2 × 4's. Reitzake stated there were 25 to 30 sheets of plywood, 30-2 × 4's and around 90-2 × 6's. The warrant was for 40-2 × 4's, 40-2 × 6's and 40 sheets of plywood; the return stated 28-2 × 4's, 38-2 × 6's and 10 sheets of plywood were found, but Caraway testified some lumber had already been used.
[2] Using the number of boards set forth in the application for a search warrant, and subtracting $100.00 (the amount the defendant paid Milan) produces a value of $498.00, close to the figure of $488.45 which the trial judge reached.